UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| MARIA KARLA TERRAZA, Plaintiff, v. SAFEWAY INC., et al., Defendants. | Case No. 16-cv-03994-JST<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 142<br><br>**UNDER SEAL** |
|---|---|

## I.  INTRODUCTION[1]

This case is about the administration of Defendant Safeway, Inc.'s 401(k) plan ("Safeway Plan" or "Plan"). The Safeway Plan is an employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2)(A) that is covered by ERISA, and an individual account plan within the meaning of 29 U.S.C. § 1002(34). The Safeway Plan is an example of what is commonly called a "defined contribution" plan. In addition to Safeway, defendants include Benefit Plans Committee Safeway Inc. n/k/a Albertsons Companies Retirement Benefits Plans Committee ("BPC"), Peter J. Bocian, David F. Bond, Michael J. Boylan, Robert B. Dimond, Laura A. Donald, Dennis J. Dunne, Robert L. Edwards, Bradley S. Fox, Bernard L. Hardy, Russell M. Jackson, Peggy Jones, Suz-Ann Kirby, Robert Larson, Melissa C. Plaisance, Paul Rowan, Andrew J. Scoggin, and Aon Hewitt Investment Consulting, Inc. ("Aon") (collectively, "Defendants").

---

[1] The Court has filed this order under seal because it contains or refers to material subject to sealing orders. Within seven days of the filing date of this order, the parties shall file a stipulated proposed redacted version of this order, redacting only those portions of the order containing or referring to material for which the Court has granted a motion to seal and which the parties still request be sealed. The parties shall also email a PDF copy of the proposed redacted order, without any ECF headers, to jstpo@cand.uscourts.gov. The Court will review the parties' proposal and issue a redacted version of the order.

1    Plaintiff Maria Terraza alleges that Safeway, its BPC, and the Plan's investment advisor,
2    Aon, violated their fiduciary duties in their selection and retention of certain investments in the
3    Plan. *See generally* ECF No. 72 ("Second Amended Complaint" or "SAC").[2] In addition to these
4    entities, she names individual members of the BPC as defendants. The facts are well-known to the
5    parties and the Court has summarized Plaintiff's allegations in detail in two prior orders, ECF Nos.
6    65, 109, and so the Court will not elaborate them here.

   Plaintiff now moves for summary judgment against all defendants on the issue of liability.
ECF No. 142. She argues that "the overwhelming evidence establishes that Defendants breached
their fiduciary duties to the Plan." *Id.* at 10. Because there are numerous disputes of fact that can
only be resolved at trial, the Court will deny the motion.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence for a reasonable trier of fact to resolve the issue in the nonmovant's favor, and a fact is material only if it might affect the outcome of the case. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)). The court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010).

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire &*

---

[2] A related case, *Lorenz v. Safeway, Inc.,* Case No. 16-cv-04903-JST, makes similar allegations.

*Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists. *Id.* at 1102-03. If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"Under ERISA, plan fiduciaries are charged with the duty of loyalty, the duty of prudence, the duty to diversify investments, and the duty to act in accordance with the documents and instruments governing the plan." *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2017 WL 2352137, at *4 (N.D. Cal. May 31, 2017) (citing 29 U.S.C. § 1104(a)(1)).

ERISA requires that a pension plan fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Under this "prudent person" standard, courts must determine "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983). The prudence analysis "focus[es] on a fiduciary's conduct in arriving at an investment decision, not on its results." *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996). This duty of prudence extends to both the initial selection of an investment and the continuous monitoring of investments to remove imprudent ones. *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828-29 (2015).

"Because the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (quoting 29 U.S.C. § 1104(a)(1)(B)). Put differently, the prudence inquiry is "fact intensive." *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1078 (N.D. Cal. 2017) (citing *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014)). "And, because it involves the application of a reasonableness standard, '[r]arely will such a determination be appropriate on a motion for summary judgment.'" *Id.* (quoting *Bd. of Trs. of S. Cal. IBEW–NECA Defined Contribution Plan v. Bank of N.Y. Mellon Corp.*, No. 09 CIV. 6273

3

RMB, 2011 WL 6130831, at *3 (S.D.N.Y. Dec. 9, 2011)).

## III. DISCUSSION

In her motion, Plaintiff does not argue that any particular action or omission by Defendants establishes liability. Rather, she presents a series of alleged failures – a sort of "greatest hits" of the depositions in the case – and argues that summary judgment is appropriate when the evidence is taken in its totality. While much of the evidence she presents is indeed unfavorable to Defendants, Defendants have submitted evidence showing that the facts presented by Plaintiff are disputed or incomplete. For this reason, the Court cannot grant summary judgment.

For example, Plaintiffs argue that the BPC's members did not have the necessary knowledge and understanding of the Plan to manage it prudently. Defendants respond with testimony from BPC members showing that they were provided with appropriate information from the Plan's investment adviser, that they reviewed that information prior to their meetings, that they actively discussed the information at their meetings, that they were aware of the expenses charged by the Plan's various funds, and that they evaluated the performance of the Plan's assets against the appropriate benchmarks. *See, e.g.*, ECF No. 171-13 (Bocian Depo.) at 3-9; ECF No. 171-5 (Jackson Depo.) at 9-12, 14-18, 22; ECF No. 171-1 (Plaisance Depo.) at 10-18. These disputes of fact prevent the entry of summary judgment. Determining which version of events is persuasive will require credibility findings that the Court cannot make on a paper record.

Plaintiffs contend that Defendants did not comply with the Plan's governing documents when choosing the Plan's investment options. Specifically, they state that "in contravention to the 2012 [Investment Policy Statement ("IPS")], Defendants never conducted a thorough review and analysis of underperforming investment managers or placed them on a watch list, and failed to ensure that the Plan's Lifecycle Funds consisted of purely passive fund of funds instead, persuaded by [JPMorgan ("JPM")] with Aon's approval, the BPC selected JPM [Target Date Funds] that were mostly actively-managed." ECF No. 142 at 28. Here too, the facts are disputed. Defendants have provided evidence that the description of the Lifecycle Funds in the 2012 IPS was a holdover from a prior investment manager, such that the description of the Lifecycle Funds as "a suite of passive 'fund of funds'" was a typographical error. ECF No. 171-17 (Ward Depo.)

4

at 8-9. Plaintiffs do not dispute this evidence. Thus, it is at best unclear that BPC members were required to follow this directive. With regard to the BPC's failure to place managers on a "watch list," Defendants have submitted evidence that the BPC reviewed the performance of fund managers at each meeting, "with [Aon] Hewitt monitoring any . . . developments at the firm," and "[s]ometimes they were performance-related. Sometimes they were related to personnel, departures, loss of a team to a different investment manager. They would address any and all risks to potential performance, including steady state . . . sub-optimal performance." ECF No. 171-2 (Fox Depo.) at 26. One BPC member testified that in addition to regular meetings at least quarterly, the BPC "often would add a special meeting to meet with fund managers, either when there was a problem with a performance or to review new options." ECF No. 171-1 at 12. As with Plaintiff's previous contention, whether these efforts met the BPC's fiduciary obligations is a disputed question of fact.

Plaintiff next argues that the BPC Members lacked the necessary knowledge and understanding of, among other things, basic investment and Plan administration concepts to manage the Plan. ECF No. 142 at 11. Plaintiffs cite no case describing a standard for determining whether a BPC member was unqualified as a matter of law, so it is difficult to know how to evaluate these facts at the summary judgment stage. In any event, these facts too are disputed. For example, among the BPC members' qualifications, a substantial percentage of them possessed Masters in Business Administration or law degrees. Some had spent careers in banking or managing the treasury function of large corporations. One of them went on to become Safeway's Chief Executive Officer. Beyond their qualifications and employment histories, various BPC members also testified to their understanding of the concepts germane to the administration of the Plan: that they understood the distinction between actively and passively managed investment options, *e.g.*, ECF Nos. 171-1 at 19, 171-13 at 9, 171-3 (Edwards Depo.) at 13; that fees were recorded in expense ratios that were measured in basis points, ECF No. 171-1 at 28, 171-4 (Boylan Depo.) at 11, 171-5 at 22; that they understood the various share classes, and that investors could qualify for different share classes "as you move up in the size or the amount of investments in a particular vehicle," and that "you may get one share class for something that may

5

have a hundred thousand in it that would carry a little higher fee, than one that has twenty million in it that may earn the distinction of having a slightly lower fee," ECF No. 171-8 (Dimond Depo.) at 8; and so forth. True, some of the BPC members stumbled in deposition when asked about particular aspects of the Plan, its assets, or the Plan's Investment Policy Statement. But as with the other aspects of Plaintiff's presentation, the Court cannot evaluate the weight of these deposition answers on a cold record.

It is not necessary to parse each of Plaintiff's remaining arguments, because the foregoing discussion suffices to show that there are numerous disputes of fact that prevent the Court from granting her summary judgment motion. Plaintiff, as the moving party who bears the burden of proof at trial, "must affirmatively demonstrate that no reasonable trier of fact could find other than for [her]," such that every element of her claims must be resolved in her favor as a matter of law based on undisputed evidence. *Evanston Ins. Co. v. Atain Specialty Ins. Co.*, 254 F. Supp. 3d 1150, 1155 (N.D. Cal. 2017) (citing *Celotex*, 477 U.S. at 325); *see also, e.g.*, *Marlo v. United Parcel Serv.*, 2009 WL 10669255, at *2-3 (C.D. Cal. Mar. 19, 2009). At this stage, Defendants need not prove they would win every dispute on issues of material fact. All they need prove is that such a dispute exists.

Tellingly, Plaintiff presents no case holding, or even suggesting, that any of the decisions made by any of the Defendants constituted *per se* breaches of their fiduciary duties. Instead, she leans heavily on the Court's prior order denying Defendants' motion to dismiss. *See, e.g.*, ECF No. 142 at 26, 28, 29, 32. That order articulated the legal standards by which the Court could determine whether Plaintiff's claims were *plausible*. *See Terraza*, 241 F. Supp. 3d at 1067 ("To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That order does not assist the Court in determining whether Plaintiff has established her allegations as a matter of law. Plaintiff also places great weight on *Tussey v. ABB, Inc.*, from the Western District of Missouri, but that opinion is a statement of decision following a bench trial, not a summary judgment decision. No. 2:06-CV-04305-NKL, 2012 WL 1113291, at *2 (W.D. Mo. Mar. 31, 2012) ("Having tried this matter over a four-week period, and having

6

reviewed voluminous records and testimony, the Court finds that the ABB Defendants and Fidelity Defendants breached some fiduciary duties that they owed to the PRISM Plans."), *aff'd in part, vacated in part, rev'd in part*, 746 F.3d 327 (8th Cir. 2014). A bench trial is precisely what is needed here.

Courts should grant summary judgment cautiously, with due respect for a party's right to have its factually-grounded claims and defenses tried to a factfinder. *DelGiacco v. Cox Commc'ns, Inc.*, No. SACV 14-0200 DOC, 2015 WL 1535260, at *4 (C.D. Cal. Apr. 6, 2015). "Summary judgment practice is already markedly overused, unwieldy, and a source of unwarranted delay." *United States v. Massachusetts*, 781 F. Supp. 2d 1, 20 (D. Mass. 2011). "[W]hen facts or inferences are conflicting, judges are duty-bound at summary judgment *not* to decide them." D. Brock Hornby, *Summary Judgment Without Illusions*, 13 GREEN BAG 2d 273, 287 (Spring 2010) (emphasis in original). The absence of any prior case granting summary judgment on similar facts should have been a sign to Plaintiff that such relief was not available here.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied.

**IT IS SO ORDERED.**

Dated: March 22, 2019

_____
JON S. TIGAR
United States District Judge